## MALACRAUIS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 17, 1924.)

No. 2224.

1. **Criminal law ⚖═394—Presence of federal officer held not to render evidence obtained by search incompetent.**

Where federal officer at police headquarters received telephonic information of violation of law and turned information over to city police, and search warrants were taken out by police and executed on their initiative, mere presence of federal officer at search and participation at instance of state officers did not render evidence obtained by search incompetent in federal court, even if warrant was invalid.

2. **Criminal law ⚖═459, 493—Conviction may rest on evidence as to odor of distillation.**

Testimony of officer that, by reason of experience, it was manifest to him that liquor was being distilled on defendant's premises, due to odor, was competent and conclusive, where undisputed as to defendant's manufacture of intoxicating liquor.

3. **Criminal law ⚖═1169(2)—Erroneous admission of evidence harmless.**

Where defendant's guilt of manufacturing intoxicating liquors was made perfectly evident by competent and undisputed testimony to which there was no objection, he was not prejudiced by erroneous admission of evidence seized under an invalid search warrant.

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern District of West Virginia, at Elkins; William E. Baker, Judge.

John Malacrauis was convicted of manufacture of intoxicating liquors, and brings error. Affirmed.

James W. Robinson, Howard L. Robinson, and Carl W. Neff, all of Clarksburg, W. Va., for plaintiff in error.

T. A. Brown, U. S. Atty., of Parkersburg, W. Va., Russell L. Furbee, Asst. U. S. Atty., of Mannington, W. Va., and H. S. Boreman, Asst. U. S. Atty., of Parkersburg, W. Va.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The defendant was convicted on the count of an indictment charging the manufacture of intoxicating liquors. The case, as it appeared from the evidence of the police officers, as well as the federal officer, was as follows:

On the afternoon of November 18, 1922, while Fred N. Wilkinson, a federal prohibition agent, was in police headquarters in the city of Clarksburg, W. Va., some one telephoned, asking to speak to a prohibition officer. Wilkinson was requested to answer the call, and was informed by the man who was telephoning that the prohibition laws were being violated at 120 Brown street, 130 Kelly street, and 812 East Pike street, in what is known as the "Kelly Hill" section of Clarksburg. Wilkinson made a note of the addresses, which he turned over to Lieut. Smith, of the city police force, and went out to supper. When he returned, the police judge was at headquarters writing out search warrants. Shortly thereafter Police Chief Wolfe came in, and he and a number of state officers, accompanied by Wilkinson, went to the section of the city where the premises mentioned were located.

The search warrant for 812 East Pike street, issued by the police judge at the request of Lieut. Smith, was what is known as a "John Doe" warrant; the name of the occupant of the premises being unknown. 812 East Pike street was a two-story brick building. The upper floor, which was level with the street, was occupied by a Spaniard. The first floor, or basement, was occupied by the defendant Malacrauis (Malacrima) and his family.

When Wilkinson and some of the police officers were still on the street car tracks in front of the house, they smelled an odor which they recognized as that of hot mash, given off by a still in operation. Two of the police officers searched the upper story. Wilkinson, accompanied by the police chief and other officers, proceeded through a gate, down a flight of steps, and into the basement room through an open door, where they found the defendant sitting by the door. Although there was a strong odor of mash, the officers discovered nothing in the room. Wilkinson went outside and around the adjoining premises, but could neither see nor smell the still. He returned to the front of the house, and followed the odor back into the basement. After a search of two hours, he noticed a trapdoor cleverly concealed in the floor. This led to a subcellar, where he found a 50-gallon still in operation, 12 gallons of whisky, and a large quantity of mash. The only opening to the subcellar was through the trapdoor.

The raid was in charge of Police Chief Wolfe, who had the warrant in his possession, and after the discovery of the still by Wilkinson he ordered his officers to arrest Malacrauis. The following day Wilkinson swore out a warrant for Malacrauis.

[1] No testimony was offered on the part of the defendant. The defendant moved before trial to exclude all evidence concerning the search, and objected to the testimony on the trial when offered, on the ground that the search was illegal, and was participated in by the federal officer. The search was not initiated, nor was it undertaken, at the instigation of a federal officer. His receiving of the telephonic information at police headquarters of the violation of the law was at the request of the city police. He immediately turned the information over to the city police. The search warrants were taken out by the police and executed on their initiative. Under these circumstances the mere presence of the federal officer at the search and his participation at the instance of the state officers did not render evidence obtained by the search incompetent, even if the warrant was invalid. Thomas v. United States (C. C. A.) 290 Fed. 133; Elrod v. Moss (C. C. A.) 278 Fed. 123.

[2, 3] Even if we assume, however, that the testimony as to the search should have been excluded, that would not avail the defendant. The federal officer, Wilkinson, testified:

"Well, when I came there and smelled this still, it was so strong that I went through that gate, down those steps, to the door. The door was open. The defendant was sitting inside the door. I said to the defendant: 'You have a still running here. Where is it?' He didn't make no answer. I went on, through the room, out on to the back porch. I didn't search at all; just looked and went through.

"Q. What can you say with reference to the odor of the still throughout that time? A. Well, you could smell it so strong that you could almost imagine that you was looking at it.

"Q. I will ask you at this time whether, in your experience, you have become familiar with the odor of moonshine liquor and mash? A. Yes, sir.

"Q. Basing your answer upon that experience, I will ask you what the odor was that came to your nostrils—what did it signify to you? A. It signified a still running—hot mash."

Thus it appears that by the smell the operation of a still was made as manifest to the officer as it would have been made by his sight. There was nothing in the testimony to discredit this statement. The defendant's guilt being made perfectly evident by competent and undisputed testimony, to which there was no objection, he was not prejudiced, and the judgment will not be reversed because of the admission of incompetent testimony. Jones v. United States (4th Circuit) 296 Fed. 632 (decided February 8, 1924); Dye v. United States (C. C. A.) 262 Fed. 6; Honeycutt v. United States (C. C. A.) 277 Fed. 941; Sneierson v. United States (C. C. A.) 264 Fed. 268; Chicco v. United States (C. C. A.) 284 Fed. 434.

Affirmed.