## BENTON v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
October 16, 1928.

No. 2744.

Hayden Clement and John C. Busby, both of Salisbury, N. C., for plaintiff in error.

E. L. Gavin, U. S. Atty., of Sanford, N. C.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge. This is an appeal brought to review a judgment of the District Court of the United States for the Middle District of North Carolina. The plaintiff in error, W. G. Benton, was convicted of violating section 3296, R. S. U. S. (26 USCA § 404). The indictment contained two counts, the first charging the defendant with removing distilled spirits upon which the tax imposed by law had not been paid from a distillery to a place other than a dis-

tillery warehouse, provided by law, and the second count charged the concealing of said spirits.

Both counts charged the defendant jointly with Robert Benton, and the second count, in one place, used the name Robert Shoe, instead of Robert Benton. The use of the name Robert Benton was evidently a typographical error. Motion was made to quash the indictment on the ground that no such person as Robert Benton existed. This motion the court sustained as to Robert Shoe, but overruled as to the defendant.

The uncontradicted evidence was that three prohibition officers went to the home of the defendant at night and secreted themselves in some vines outside the defendant's yard; that about daybreak they heard a pump being used in a woodshed some ten steps from defendant's dwelling house, and saw the defendant and others carry a can, afterwards found to contain 5 gallons of whisky, from the woodshed to an automobile near by. The officers then entered defendant's yard, and arrested the defendant and a boy. Others of those present ran and escaped. The officers then went into the woodshed, where they had heard the pump, and from which the can of whisky had been carried, and found seven 5-gallon cans containing whisky; back of the woodshed was found a 52-gallon barrel, practically full of whisky; three barrels were found buried in the garden, and two barrels of whisky were found buried in a hog lot. In all, 360 gallons of whisky were found, and the automobile showed by its condition that it had been used in transporting whisky. Some of the whisky found was warm. The defendant admitted the whisky was his property. There is no evidence that the dwelling house was entered.

Three points are relied on by the defendant: (1) That the court below erred in not sustaining the motion to quash the indictment as to the defendant; (2) that section 3296, R. S. U. S., is not in force, having been repealed by the Volstead Act and the Willis-Campbell Act (27 USCA); (3) that the search by which the evidence was obtained was unlawful, and in violation of the Fourth and Fifth Amendments to the Constitution of the United States, and that the evidence obtained by the search which was admitted over the objection of defendant's counsel should have been excluded.

The offense charged was one that could have been committed by any one of the defendants without the aid or assistance of any one else, and was one for which either of the parties charged could have been convicted separately. The use of a fictitious or mis-

696

taken name in no way affected the defendant. Section 1025, R. S. U. S. (18 USCA § 556), provides that:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

"This section [1025, R. S.] has almost universally been construed to mean mere matters of form should not avail a criminal, if the bill charges the offense in such a way as to fully inform him of the violation of law with which he is charged, and protect him, in the event of acquittal or conviction, against a second trial for the same offense. Mac-Daniel v. U. S. [C. C. A.] 87 F. 324."

The defendant was fully informed as to the charge against him, and the action of the court in refusing to sustain the motion to quash was clearly right.

■ This court, on the authority of United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358, has repeatedly held all revenue statutes, including section 3296, R. S. U. S., to have been re-enacted by the Willis-Campbell Act and to be in force. Neely v. United States (C. C. A.) 2 F.(2d) 849. Harrison v. United States, 25 F.(2d) 1019, decided by this court April 23, 1928.

Since the decision of the Supreme Court in the Stafoff Case, supra, where the court said, "Of course Congress may tax what it also forbids," we can find no holding of any federal court to the effect that the revenue statutes, including section 3296, R. S., are not in force. The case of Harrison v. United States, supra, was a case involving section 3296.

■ On the question of the lawfulness of the search made, it seems clear from the evidence that the officers at no time entered the dwelling of the defendant, and only entered the fenced yard after they had good reason to believe that they saw the crime, of which the defendant was convicted, being actually committed. The woodshed, the garden, and the hog lot were not searched until after the defendant's arrest and after his admission of guilt.

In Hester v. United States, 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898, it was held that, in a prosecution for a violation of this same section 3296, admission of testimony of revenue officers as to finding moonshine whisky in a broken jug and other vessels near the house where the defendant resided, was not error, and that the search made was not a violation of the Fourth and Fifth Amendments, even though the officers held no warrant and were trespassers on the land. In the opinion Mr. Justice Holmes says:

" * * * The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields."

One of the leading cases on the question of the right to arrest for a crime committed in the presence of officers, and on search and seizure, is McBride v. United States (C. C. A.) 284 F. 416. In that case the court lays down the rule that it is always lawful to arrest a person without warrant, where a crime is being committed in the presence of an officer, that it is lawful to enter a building without a warrant within which such crime is being perpetrated, and that, where an officer is made aware by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without a warrant.

The doctrine in the McBride Case has been approved in the following cases, among others: Bell v. United States (C. C. A.) 285 F. 145; Garske v. United States (C. C. A.) 1 F.(2d) 620; Tritico v. United States (C. C. A.) 4 F.(2d) 664; Marron v. United States (C. C. A.) 8 F.(2d) 251, affirmed in Marron v. U. S., 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; Miller v. United States (C. C. A.) 9 F.(2d) 382; Dexter v. United States (C. C. A.) 12 F.(2d) 777; Lee Kwong Nom et al. v. United States (C. C. A.) 20 F.(2d) 470.

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed * * * is not to be doubted." Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

"When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution." Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

It seems to be well settled in the federal courts that duly authorized peace officers may make arrest without a warrant for a crime which is being committed in their presence.

"The courts very generally hold that an offense is committed within the presence of an officer when his senses afford him knowledge that such is the fact." Garske v. U. S. (C. C. A.) 1 F.(2d) 620.

Nor is it necessary that the officers actually see the liquor. Garske v. United States, supra. In Lee Kwong Nom et al. v. United States, supra, Judge Manton discusses the question of search, and cites approvingly the McBride Case, also the case of United States v. Borkowski (D. C.) 268 F. 408. The court says:

"Federal agents may lawfully enter a house where they smell raisins in the process of cooking, and the cellar, where they found a still, liquor, and paraphernalia used in the manufacture of liquor, and seize such property."

In that case Judge Manton points out that the sense of smell which made possible the detection was held to be as important as the sense of sight which might see the crime being committed.

In Schnorenberg v. United States (C. C. A.) 23 F.(2d) 38, a search based upon the sense of smell was held to be sufficient to justify a reasonably cautious man in believing that the crime of unlawfully keeping liquor in a barn was then being committed and committed in his presence.

In the recent case of Marron v. U. S., 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, Mr. Justice Butler discusses the question of arrest without a warrant by prohibition agents for a violation of the National Prohibition Act (27 USCA) committed in their presence and says:

"When arrested, Birdsall was actually engaged in a conspiracy to maintain, and was actually in charge of, the premises where intoxicating liquors were being unlawfully sold. Every such place is by the National Prohibition Act declared to be a common nuisance, the maintenance of which is punishable by fine, imprisonment or both. Section 21, tit. II, Act of October 28, 1919, c. 85, 41 Stat. 305, 314 (U. S. C. tit. 27, § 33). The officers were authorized to arrest for crime being committed in their presence, and they lawfully arrested Birdsall. They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. Agnello v. United States, supra, 30; Carroll v. United States, 267 U. S. 132, 158 [45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790]; Weeks v. United States, supra [232 U. S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177]. The closet in which liquor and the ledger were found was used as a part of the saloon. And, if the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none the less a part of the outfit or equipment actually used to commit the offense. And, while it was not on Birdsall's person at the time of his arrest, it was in his immediate possession and control. The authority of officers to search and seize the things by which the nuisance was being maintained, extended to all parts of the premises used for the unlawful purpose. Cf. Sayers v. United States [C. C. A.] 2 F.(2d) 146; Kirvin v. United States [C. C. A.] supra [5 F.(2d) 282]; United States v. Kirschenblatt [C. C. A.] supra [16 F.(2d) 202, 51 A. L. R. 416]."

In the case of Henderson v. United States (C. C. A.) 12 F.(2d) 528, 51 A. L. R. 420, there is a full discussion of the right of search and seizure, and the authorities are fully reviewed. In that case the court reached the conclusion that the crime was not committed in the presence of the officers, and that the arrest was a mere pretext for the search, and that the search was in no wise incident to the arrest and was therefore unlawful. Such is not the case here.

In the case of Olmstead et al v. United States, 48 S. Ct. 564, 72 L. Ed. 944, decided June 4, 1928, Mr. Chief Justice Taft, in delivering the opinion of the court, said:

"A standard which would forbid the reception of evidence, if obtained by other than nice ethical conduct by government officials, would make society suffer and give criminals greater immunity than has been known heretofore. In the absence of controlling legislation by Congress, those who realize the difficulties in bringing offenders to justice may well deem it wise that the exclusion of evidence should be confined to cases where rights under the Constitution would be violated by admitting it."

A careful review of the authorities bearing on this point impels us to the conclusion that the officers had the right to arrest the defendant, Benton, without a warrant, because the circumstances proved beyond any doubt that a crime was being committed in their presence, and also had the right, because incidental to a lawful arrest, to make the search they did make.

There was no error in the trial below, and the judgment is accordingly affirmed.