**UNITED STATES of America**

**v.**

**William L. BUCHNER, Jr.**

**Cr. No. 339-58.**

United States District Court
District of Columbia.
May 12, 1958.

Oliver Gasch, U. S. Atty., and Alfred Hantman, Asst. U. S. Atty., Washington, D. C., for the United States.

John R. Fitzpatrick, Washington, D. C., for defendant.

TAMM, District Judge.

The defendant William L. Buchner, Jr., who was indicted on several counts in an indictment charging violation of Title 22, Sections 1501, 1502, 1504, and 1505 of the District of Columbia Code, has moved for the return of seized property and suppression of evidence seized pursuant to a search warrant from apartment 301 at 2500 K Street, N. W., in the City of Washington, District of Columbia.

The evidence disclosed at a hearing on this motion reveals that a police officer had, on at least five occasions, entered this apartment building and proceeded to the hallway in front of the defendant's apartment. Upon arrival at apartment 301, he would then eavesdrop, and what he heard as a result of this eavesdropping convinced him that a lottery was in operation. The information which the police officer

secured in this manner served as a basis for arrest and search warrants which were later executed.

The defendant has filed a timely motion to suppress the seized evidence— his contention being that since the police officer had no authority to enter the apartment building, he was a trespasser, and therefore any information which he obtained in his role as a trespasser was illegal and thus could not constitute probable cause for the issuance of the search and arrest warrants.

The defendant relies heavily, if not exclusively, on the case of McDonald v. U. S., 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, in which the Supreme Court held that the officers were not justified in making a *forcible* entry into a rooming house, especially so since they possessed no type of a warrant. Mr. Justice Jackson wrote (335 U.S. at page 458, 69 S.Ct. at page 194):

> "But it seems to me that each tenant of a building, while he has no right to exclude from the common hallways those who enter lawfully, does have a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry."

Further, the Supreme Court relies heavily upon the fact that the manner itself in which the police entered the rooming house constituted a crime that was more serious than the crime that they were attempting to suppress. This Court feels that because of the emphasis placed upon the fact that a *forcible* entry was involved in the McDonald case, the holding of the McDonald case should be applied only in instances involving *forcible* entry, or where permission to enter has been denied. Further, the application of this rule will also depend upon the particular fact situation in each case.

In the case before this Court, there has not been the slightest disclosure that the police officer used "force" to enter the apartment building at any time.

Mr. Justice Jackson, in the case of McDonald v. U. S., supra, also wrote as follows:

> "Had the police been admitted as guests of another tenant or had the approaches been thrown open. by an obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another's shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible."

But, let us assume that the policeman was guilty of a trespass as the defendant contends. In the case of United States v. Hayden, D.C., 140 F.Supp. 429, the following facts were developed. The defendant was known by investigators of the Alcohol and Tobacco Tax division to be a major violator. The police had learned on two previous seizures that this defendant was a "backer" of the illegal activity and was never present himself. But they also determined that he had a certain truck that he used to transport the liquor. The police then began to observe the defendant's activities for a few months. Finally, on a Sunday in September, one of the agents who had been keeping the defendant under surveillance saw that the defendant's personal car was in front of his dry cleaning plant and that the truck was gone. The dry cleaning plant, which was the defendant's, was never open on Sundays so the agent suspected that the defendant was using the truck to pick up liquor. After locating the truck and following it for a while, the agent lost it. Returning to the cleaning plant that evening, the agent saw the truck parked in the driveway beside the cleaning plant. The agent then approached the truck and, looking through the rear window, saw

a partially covered cardboard container which was of the type and size customarily used to carry jars of illegal liquor. He also detected the distinctive odor of nontax-paid liquor. After notifying his superior who, upon his arrival, also walked down the defendant's driveway and observed the contents of the truck through the rear window, these two agents in the company of two others stationed themselves across the street from the defendant's premises. The next morning the defendant approached the truck, entered it and backed it into an open shed. He then lifted the hood (so that the view from the street was obstructed), opened the rear door and carried a carton from the truck into the shed. The agents then drove onto the defendant's property and stopped at the rear of the shed. While one agent was questioning the defendant, the other went to the front of the shed, and he saw in the rear of the shed a carton covered by a burlap bag, canvas and an automobile wheel. There were no other cartons in the shed. The defendant was arrested, and twelve jars of nontax-paid liquor were found in the carton and seized. The arresting officers had neither arrest nor search warrants.

The Court (at page 434) wrote as follows:

"The Court of Appeals for the Fourth Circuit has considered the problem of the trespassing officer in a number of cases. In Jones v. United States, 4 Cir., 1924, 296 F. 632, 634, the search was conducted on a lot fenced on all sides and on which there were located the defendant's residence, his shop, and a third building which was leased to a tenant, the latter two buildings being separated from the former by an inner fence. The yard was common to all three buildings. The officers searched the store first, then the yard behind the store and finally, the leased building. The Court, by way of dictum, stated that '* * the mere entry of the officers into the yard of the defendant without a search warrant, and the discovery of the bottles and keg, was not obtaining evidence by an unreasonable search.' Three subsequent cases have made it clear that a mere technical trespass resulting in the obtaining of information through the use of the senses of sight, smell or hearing does not contravene the Fourth Amendment and, further, that the information so obtained may in part constitute probable cause for a subsequent arrest and search without a warrant. Benton v. United States, 4 Cir., 1928, 28 F.2d 695; Janney v. United States, 4 Cir., 1953, 206 F.2d 601; dictum, United States v. Williams, 4 Cir., 1955, 227 F.2d 149, 151. In the Benton case, supra, the officers secreted themselves at night in some vines outside the yard of the defendant's home from which vantage point they were able to see and hear certain activities which reasonably led them to believe nontax-paid liquor was being removed and concealed. In the Janney case, supra, having arranged with one Charles Torain to attempt to purchase whiskey from the defendant, the officer carrying a handy talkie radio entered a field at night one-half mile from the defendant's home and proceeded across the defendant's land to a point just west of a fence one hundred feet to the east of which was located the defendant's home. As the officer watched, he was not over thirty-five feet from a truck parked in a barn on the east side of the fence, and, by the light of passing automobiles, he was able to see that the truck was loaded with a number of cases of the type regularly used in the illicit liquor trade.

"In the Williams case, supra, the officers entered the defendant's land at night, stationing themselves three hundred yards away from

his home on the other side of a dirt road which ran behind the house. When a panel truck pulled into the garage and loading began, the officers started up the road, the smell of nontax-paid whiskey becoming apparent as they came within twenty-five steps of the garage."

The trial Court in the Williams case granted a motion of the defendant to suppress. On appeal, the Court wrote:

"We would find difficulty in sustaining the order of the court below, * * * Here, a crime was being committed in the presence of the officers; and their senses of sight, smell and hearing apprised them of its commission. The fact that they obtained some of this information by walking across the land of defendant is immaterial. This was, at most, nothing more than a civil trespass and in no sense an unlawful search forbidden by the Constitution."

■ There is a distinction in the cases as to just what physical area is sometimes covered by the protection guaranteed by the Fourth Amendment of the Constitution. In applying the reasoning set forth to the case before the Court, it seems that since an "open field" or land owned by the defendant which is directly connected and closely connected to his dwelling or store, is not under the protection of the Fourth Amendment, then this protection guaranteed by the Fourth Amendment should not be extended to include "relatively public corridors." Whitley v. United States, 1956, 99 U.S.App.D.C. 159, 237 F.2d 787, 788.

■ Therefore, in the case before the Court, even if the officer were guilty of a technical trespass by reason of the manner in which he obtained information, still, this information could validly be used as the basis for arrest and search warrants.

The motion of the defendant to suppress the seized evidence is hereby denied.