UNITED STATES of America,
Appellee,

v.

Ralph CONTI and David Newman,
Appellants.

No. 289, Docket 30114.

United States Court of Appeals
Second Circuit.

Argued March 24, 1966.

Decided June 1, 1966.

William T. Griffin, New York City (James F. Hart and Dorsey, Burke & Griffin, New York City, with him on the brief), for appellant Conti.

Irwin Klein, New York City, for appellant Newman.

Michael W. Mitchell, Asst. U. S. Atty. (John E. Sprizzo, Asst. U. S. Atty., and Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, with him on the brief), for appellee.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge.

Appellant Ralph Conti was convicted of willfully evading payment of the federal excise tax on wagering imposed by 26 U.S.C. § 4401, in violation of 26 U.S.C. § 7201; willfully failing to file a wagering excise tax return, in violation of 26 U.S.C. §§ 7203, 4401, 6071, and 6061; willfully failing to pay the excise tax on wagers, in violation of 26 U.S.C. §§ 7203 and 4401; and engaging in the business of accepting wagers without paying the tax imposed by 26 U.S.C. § 4411 and without registering with the District Director of Internal Revenue as required by 26 U.S.C. § 4412, all in violation of 26 U.S.C. § 7203. Appellant David Newman was charged with the same offenses and convicted of all but the first, as to which charge the jury disagreed.

I. *The Legality of the Search of the Apartment.*

After Special Agent Nicholas Treretola of the Internal Revenue Service placed a bet in a call to a telephone located in Apartment B, 1582 First Avenue, New York, New York, the Internal Revenue Service placed the apartment under surveillance for a few days, observed Newman and Conti coming in and out of the apartment, and placed more bets over the phone. On January 22, 1964, a United States Commissioner issued a warrant for the search of the apartment, upon the affidavit of Special Agent David Ostrager. The warrant was executed the same day while Conti and Newman were in the apartment. Both men were arrested and a variety of bet slips, odds sheets, racing programs, and the like were seized.

Appellants moved to suppress the fruits of this seizure before trial. Judge Weinfeld denied the motions in Conti v. Morgenthau, 232 F.Supp. 1004 (S.D.N.Y. 1964). The fruits of the search were admitted into evidence at trial over the objections of the appellants. Appellants now urge that the fruits of the search were inadmissible for any of several reasons, and that as a result the convictions must be reversed.

Appellants urge first that the warrant was fatally inconsistent with the affidavit upon which it was based. The warrant declared that there was probable cause to believe that betting slips and various other gambling paraphernalia were being concealed at the apartment and were being used in the business of accepting wagers in violation of 26 U.S.C. §§ 4401, 4411, 4412, and 7272. The first of these sections imposes a federal excise tax on wagering; the second imposes a $50 annual tax on persons accepting wagers; the third requires such persons to register with the district director of internal revenue; and the fourth imposes a $50 penalty on such persons who fail to register. Appellants urge that the only criminal offense mentioned in the warrant is that of not registering, whereas the affidavit of the Special Agent sets forth reasons for believing that the apartment was being used to carry on the business of accepting wagers without payment of the special occupational tax, but does not mention any grounds for believing that the residents had not registered with the District Director. An unreported case, United States v. Tripodi, S.D.N.Y., November 14, 1962, 62 Cr. 655, held that just such an inconsistency between an arrest warrant and the complaint on which it was issued presented grounds for the suppression of evidence obtained as a result of the subsequent arrest.

We do not find this apparent inconsistency fatal. The facts set forth

in the affidavit indicated reasonable grounds for the belief that appellants had not paid their occupational tax. Payment of the occupational tax accompanies filing of a return on Form 11–C, which is the means prescribed by the Regulations for registering in order to comply with § 4412 and to avoid violation of § 7272. Regs. § 44.4901–1(a), (c). The same information which indicated failure to pay the occupational tax in this case also indicated failure to register, and therefore violation of § 7272.

Appellants also challenge the sufficiency of the affidavit upon which the search warrant was issued. The affidavit, given by a special agent of the IRS, set forth the following as indicative of probable cause:

"* * * Testimony of a Special Agent of the Internal Revenue Service who: (1) placed horse bets by telephoning number TR 9-2265; (2) that investigation has disclosed that the telephone number is installed at Ground Floor Apartment B at 1582 First Avenue, New York, New York; (3) that a search of the records of the Internal Revenue Service reveal that none of the persons residing at the afore-mentioned address have paid the Special Tax imposed by Title 26, United States Code, Section 4411; and (4) that wagers were placed by the Special Agent on January 20, 21, 1964."

The date of the affidavit was January 22, 1964.

■■ Appellants point out that the information relied on is not that of the affiant. However, hearsay may serve as the basis for the issuance of a warrant, if there is reason to believe that the hearsay is reliable. Rugendorf v. United States, 376 U.S. 528, 533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Here, the declarant was a special agent, and he spoke of things he himself had done in telephone calls to the phone located in the apartment. This seems sufficient indication of the reliability of the informa-

tion. See United States v. Freeman, 358 F.2d 459 (2d Cir. 1966).

■ Appellants contend that the affidavit does not indicate various crucial dates and, therefore, does not indicate that probable cause existed on a date close to the date of issuance of the warrant. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). However, it seems fairly clear from the language of the affidavit that the special agent on whose information the affiant relies placed the bets on January 20 and 21. The use of the article "the" to refer to the special agent described under (4) indicates that the agent intended is the same as the one mentioned at the beginning of the paragraph. Moreover, the use of the present tense in the phrase "a search of the records * * * reveal" [sic] indicates that the search was made at a time close to the time of the giving of the affidavit.

It is true that details of who made the search and the investigation mentioned in (2) and (3) are not given. It is also true that the paragraph is not a paragon of grammar and style. But we must bear in mind the recent comments of the Supreme Court that:

"* * * affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Under the standards of *Ventresca*, the affidavit here was sufficient grounds for issuance of the warrant.

■ Appellants maintain, however, that even if the allegations constituted

probable cause, the evidence underlying those allegations was procured by trespass. It appears that the apartment building had a hall door which was meant to be kept locked and which could be opened only by tenant's keys or buzzes from tenants. There was testimony to the effect that the door was often open, and even if closed, its lock was broken and could be opened by almost any key. Appellants argue that evidence constituting probable cause was obtained only by keeping Apartment B under surveillance from inside the hall door, and that IRS agents entered this protected and semi-private space without the consent of the tenants and, consequently, as trespassers. See McDonald v. United States, 335 U.S. 451, 458–459, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (Jackson, J., concurring). However, the Supreme Court in *McDonald* did not hold that officials could not peaceably enter common corridors and hallways in a multiple dwelling in the course of a surveillance. In that case, the police gained entrance to the building by climbing in through the landlady's window, and intruded upon the defendant's right of privacy before arresting him by peering through his transom. More recent cases have indicated that peaceable entry which works a technical trespass is permissible in order to gather evidence indicating probable cause, so long as the trespass does not impinge upon some area protected by the Fourth Amendment. United States v. Buchner, 164 F.Supp. 836 (D.D.C.), aff'd per curiam, 268 F.2d 891 (D.C.Cir.1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 573 (1959); see United States v. St. Clair, 240 F.Supp. 338 (S.D.N.Y.1965). This court has recently held that a lobby of an apartment house, guarded by a door usually kept locked, is not within the curtilage of a tenant's apartment, and so is not a protected area within which the individual tenants have Fourth Amendment rights. United States v. Miguel, 340 F.2d 812 (2d Cir.), cert. denied, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965). It follows from *Buchner* and *Miguel* that the peaceable entry here involved, although perhaps a technical trespass, did not vitiate the surveillance evidence tending to establish probable cause.

Finally, appellants urge that the method of execution of the warrant was illegal. On January 22, armed with the warrant, two IRS agents entered the hallway of the apartment building and watched the door of Apartment B from behind the door leading to the cellar. When they saw Conti unlock the door to the apartment, both agents came out. One announced that he was a federal officer with a search warrant and walked past Conti into the apartment while Conti was withdrawing the key from the lock.

Appellants maintain that this conduct was in violation of 18 U.S.C. § 3109, which provides that:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Appellants contend that "breaking" under this statute must be read broadly to mean any entry without permission, even though the entry does not damage any part of the house, see Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

However, it is clearly established in this circuit that "breaking" in the statute means forcible entry. United States v. Garnes, 258 F.2d 530, 533 (2d Cir.), cert. denied, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1958); United States v. Monticallos, 349 F.2d 80 (2d Cir. 1965) (agents entered unannounced, following prospective customer for narcotics through open door). The entry here was entirely peaceable.

II. *The Language in the Indictment Charging Both Receiving and Accepting Wagers.*

All five counts against each of the defendants charged them with having been "engaged in the business of accepting

wagers and in receiving wagers for and on behalf of a person engaged in the business of accepting wagers. * * * " Appellants urge, as they did below, that the Government should have been required to elect between charging appellants as receivers or as acceptors of wagers.

The statutes differentiate between an "acceptor" of wagers, who is the banker or principal in a wagering operation, and "receivers" of wagers, who takes bets as runners or agents for "acceptors," H.R. Rep. No. 586, 82nd Cong. 1st Sess. 56 (1951); Sen.Rep. No. 781, 82nd Cong. 1st Sess. 114 (1951) and courts have held fatal a variance between an indictment charging one form of betting activity, and proof establishing another. United States v. Pepe, 198 F.Supp. 226 (D.Del. 1961), aff'd per curiam, 339 F.2d 264 (3d Cir. 1964). However, the same court which affirmed Pepe later held that it was not grounds for reversal to charge both "accepting" and "receiving" where the evidence indicated the presence of both activities and where no request for an election had been made at trial. United States v. Manos, 340 F.2d 534 (3d Cir. 1965). But cf. United States v. Nicholas, 224 F.Supp. 310 (W.D.Pa.1963).

■ We hold that the indictment was not defective for charging both activities in the conjunctive, even though the defendants requested an election at trial. Charging alternative ways of violating a statute in the conjunctive is permissible, and a conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged. Smith v. United States, 234 F.2d 385 (5th Cir. 1956). This principle applies here. Both the acceptor and the receiver are required to register under § 4412 and to pay the occupational tax imposed by § 4411. The acceptor is required to pay the excise tax under § 4401, and the Regulations make clear that a receiver also is liable under § 4401, until he discloses the name of his principal. Reg. § 44.4401–2(a) (2). In short, accepting and receiving without registering and

paying the taxes imposed by these sections amount, in effect, to different ways of violating the same statutes.

III.  *Miscellaneous Conduct and Rulings of the Trial Court.*

Appellants assert they were denied a fair trial as a result of the conduct and rulings of the trial court. They cite several instances, which may be summarized and disposed of briefly.

■ The trial court required appellants to choose between making their opening statements immediately after the opening statements of the prosecution, and not making them at all. This seems well within the trial court's broad power to regulate the conduct and timing of a trial, and not prejudicial to the defendants.

■ The trial court excluded offered testimony of a retired special agent of the IRS, by whose testimony appellants intended to show that the special agents watching from behind the cellar door could not have seen activities at the door of Apartment B. This evidence was of little relevance except as to the existence of probable cause, which had already been established in the preliminary hearing before Judge Weinfeld. Moreover, the testimony would tell the jury nothing it could not deduce by itself from the testimony as to the lay-out of the apartment and the landing.

The trial court declined to hold a new hearing on the admissibility of the fruits of the search, saying that he was content to abide by the results of the hearing before Judge Weinfeld. This was perfectly proper, in the absence of any offer of important new evidence of which appellants were not aware at the time of the preliminary hearing. United States v. Wheeler, 172 F.Supp. 278 (W.D. Pa.1959), aff'd, 275 F.2d 94 (3d Cir. 1960); Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37 (1954).

■ The trial court urged throughout that the trial time be held to one week. Appellants do not indicate how they were prejudiced by this insist-

ence. They contend that the court misled them into thinking that requests for charges would be considered timely up to the time of charge. This is simply not so. Nor is it true that the trial court denied them sufficient time to have their handwriting expert examine the exhibits which the Government claimed were in the handwriting of the appellants. The appellants had known that this material was in the possession of the Government for months, and knew as of the first day of trial that the Government intended to establish by means of a handwriting expert that the material was written by the appellants.

After the jury had been out for some time, the court called them in to question them as to whether it would be necessary to reserve hotel rooms for them. He called up counsel for a sidebar conference and told them that he intended to ask the jury, not as to how they were thinking, but as to which counts they were in agreement on, one way or the other. Counsel acquiesced, counsel for the appellants apparently in the belief that the trial court would accept the verdict on the last four counts and might dismiss the first count. The jury reported agreement on all counts except as to Count 1 against one defendant. The trial court accepted this as the verdict of the jury. We fail to see how appellants were prejudiced by this procedure.

Finally, in the charge to the jury, the court spoke in passing of the need to demonstrate a greater quantum of willfulness with respect to a felony count than with respect to a misdemeanor count. The language was not dissimilar to that used by the Supreme Court in discussing the same point in Ingram v. United States, 360 U.S. 672, 676, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). Moreover, the charge read as a whole is a fair statement of the different requirements of proof under the different counts.

IV. *Sufficiency of the Evidence on Count 1.*

Conti, the sole appellant convicted under Count 1, urges that the evidence against him was insufficient, since it did not establish willfulness. It is true that there was no evidence which directly indicated that for several months Conti knew of the existence of the 10% excise tax imposed by § 1441 and nevertheless deliberately attempted to evade it. However, Conti's conduct before arrest and his extraordinary behavior at the time of arrest was sufficient to establish the willfulness of his conduct. Conti used a code to conceal the name of bettors. He approached and departed the apartment in a surreptitious fashion. At the time of his arrest, he gave a false name and, when told that he was being arrested for not having the federal tax stamp, he replied that he had not been caught taking bets. He also attempted to discard the keys to the apartment and various odds sheets without attracting the attention of the arresting officers.

V. *The Constitutionality of the Wagering Tax Statutes.*

Appellants make a *pro forma* attack on the constitutionality of the wagering tax statutes "in order * * * to preserve [the argument] for possible review. * * *" We adhere to our recent decision in United States v. Costello, 352 F.2d 848 (2d Cir. 1965), cert. granted, 382 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 205 (Mar. 22, 1966), upholding the constitutionality of these statutes.

VI. *Conclusion.*

The convictions are affirmed.

WATERMAN, Circuit Judge:

I concur in the result.